# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 7275 | **DATE** | 4/6/2011 |
| **CASE TITLE** | Oberoi et al vs. Mehta et al | | |

**DOCKET ENTRY TEXT**

■ [ For further details see text below.]   Docketing to mail notices.

## STATEMENT

Plaintiffs M&A Petroleum Corp., B&K Petroleum Corp., B&A Petroleum Corp., Elite Fuel One, Inc., Elite Fuel Two, Inc., Elite Fuel Three, Inc., Elite Fuel Four, Inc., Elite Fuel Five, Inc., Elite Fuel Six, Inc., Elite Fuel Seven, Inc., MF Oil Findlay, Inc., MF Oil Beavercreek, Inc., MF Oil Fairfield, Inc., Ish Oberoi, Saif Mohammed, Abul Zaidi, Sameer Husain, Sarmed Ali, Zahid Ali, Rabia Ahmed, Satish Oberoi, and Sakshi Bector (together, "Plaintiffs"), filed suit against American Enterprise Bank ("AEB"), Charnpul Ghuman ("Ghuman"), and Sheetal Mehta ("Mehta") (together, "Defendants"). Specifically, Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq*. ("RICO") (Count IV) as well as state law claims in Counts I-III and V-X. Defendants move to dismiss all Counts. For the following reasons, the Court grants Defendants's Motions to Dismiss Count IV with prejudice. The Court declines to exercise supplemental jurisdiction over the remaining state law claims in Counts I-III and V-X, which are dismissed without prejudice.

RICO is a "unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). "While a dismissal of a RICO claim is appropriate if the plaintiff fails to allege sufficient facts to state a claim that is plausible on its face, the adequate number of facts varies depending on the complexity of the case." *Kaye v. D'Amato*, 357 Fed. App'x 706, 710 (7th Cir. 2009). Allegations of fraud in a civil RICO claim are subject to the heightened pleading standard set forth in Rule 9(b). *See id.* A RICO plaintiff must prove four elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *See Gamboa*, 457 F.3d at 705.

Here, Plaintiffs accuse Defendants of orchestrating a scheme to defraud the nine individual plaintiffs and induce them to purchase nineteen gas stations in three different states at inflated prices using falsified loan applications and income statements. These gas station purchases all occurred at three separate closings, two in December 2007 and one in May 2008. Defendants move to dismiss Count IV, stating that Plaintiffs are unable to demonstrate the required elements of an enterprise and a pattern of activity under RICO. The Court first

addresses whether Plaintiffs have demonstrated a pattern of activity.

A "pattern of racketeering activity" requires at least two predicate acts within a ten-year period. 18 U.S.C. § 1961(5). Establishing a pattern also requires a showing of the "continuity plus relationship" test: that the racketeering predicates are related to one another and pose a threat of continued criminal activity. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (Section 1961(5) implies that two acts may not be sufficient to establish a RICO pattern); *Gamboa*, 475 F.3d at 706 (isolated instances of criminal behavior, not presenting at least some threat of future harm, cannot meet § 1962(c)'s continuity element); *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 633 (7th Cir. 2001) (continuity demonstrated by a company that "habitually" uses its store "as an engine of fraud"). The Defendants concede that the alleged predicate acts are related to one another but argue that Plaintiffs have failed to plead the continuity element.

Continuity can be "closed-ended" or "open-ended." Closed-ended continuity "refers to a closed period of repeated conduct" while open-ended continuity refers to "past conduct that by its very nature projects into the future with a threat of future repetition." *H.J.*, 492 U.S. at 241. Here, Plaintiffs do not allege an open-ended scheme, most likely because the FDIC already investigated AEB's lending practices with regards to gas stations (Compl. ¶ 46) and because Ghuman fled to India after the alleged scheme terminated. (Compl. ¶ 152.) Moreover, Plaintiffs do not allege that any scheme extended beyond 2008. As such, the Court will analyze the Complaint under the closed-ended requirements.

To sufficiently plead a closed-ended pattern of racketeering activity, Plaintiffs must demonstrate "a series of related predicates enduring a 'substantial period of time.'" *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992) (internal citation omitted). Relevant factors include "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries." *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 473 (7th Cir. 2007). Of these, "[t]he duration of the alleged racketeering activity is 'perhaps the most important element of RICO continuity.'" *Id.* at 473-74 (finding an alleged scheme of ten months to be too short) (citation omitted).

As an initial matter, Plaintiffs's attempt to allege a scheme involving over 100 loans and gas stations (Compl. ¶¶ 31, 151) over the course of two years—2006 to 2008—is unavailing. *See id.* at 475 (noting that claims of "fraud on the public" are insufficient and that "unspecific assertions" that other victims exist are "inadequate"). Aside from the loans allegedly made to Plaintiffs that form the basis of the Complaint, Plaintiffs did not plead any acts related to the other 100 loans with the required specificity. In addition, the Complaint states that Mohammed Ali, a non-party but the son and brother of Zahid Ali and Sarmed Ali, respectively, had successfully run gas stations that he had previously purchased from Ghuman. (Compl. ¶ 73.) At no point do Plaintiffs assert that the loans that Mohammed Ali secured through Ghuman were fraudulently obtained or were part of a broader scheme to defraud. Therefore, the fact that Ghuman is alleged to have "flipped" over 100 gas stations from 2006 to 2008 is not relevant to the Court's RICO analysis to the extent that those 100 gas stations go beyond the loans made to the Plaintiffs at issue here.

Count IV's more limited assertion that "[t]he scheme to defraud the [P]laintiffs took place between mid 2007 through mid 2008" is closer to the specific dates set forth in the Complaint.[1] (Compl. ¶ 159.) As such, Plaintiffs plead a scheme that lasted approximately ten months, from Ghuman's initial pitch in August 2007 through the third closing in May 2008. Courts, however, have routinely held that, given Congress's desire to combat "long-term" activity, the RICO statute "was never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions." *See Jennings*, 495 F.3d at 472. More specifically, ten month schemes are generally too short to allege a RICO violation. *See id.* at 474-75 (collecting cases where schemes

ranging from six to twelve months in duration were found to be too short to allege a RICO violation); *Midwest Grinding*, 976 F.2d at 1024 (finding a nine-month scheme insubstantial).

Moreover, the fraudulent transactions at issue here relate to three separate closing dates that were part of a single broader scheme to defraud investors—specifically, as Plaintiffs allege, a scheme to defraud South Asian entrepreneurs using inflated sales figures and falsified loan applications and income statements. (Compl. ¶¶ 28, 31.); *see U.S. Textiles, Inc. v. Anheuser-Busch Cos., Inc.*, 911 F.2d 1261, 1269 (7th Cir. 1990) (noting that "while a RICO pattern can be established, in some circumstances, by proof of a single scheme, it is not irrelevant, in analyzing the continuity requirement, that there is only one scheme.") (internal citation omitted).

The Seventh Circuit has also "repeatedly rejected RICO claims that rely . . . heavily on mail and wire fraud allegations to establish a pattern." *Jennings*, 495 F.3d at 475. Here, Plaintiffs allege, as the underlying criminal acts of the RICO conspiracy, mail and wire fraud violations relating to misrepresentations made by and among Defendants to Plaintiffs at the three separate closings. (Compl. ¶¶ 153-55.) Specifically, Plaintiffs contend that Defendants made false representations over the phone about the value of the gas stations and then mailed falsified loan applications and income statements so that Plaintiffs's loan applications would be approved. (Compl. ¶ 155.) Plaintiffs's allegations of mail and wire fraud, however, comprising one overarching scheme to defraud investors at three separate closings over a ten month period, do not, in spite of the nine individual victims, amount to a RICO violation. *See Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 674 (7th Cir. 2005) (noting that "the fact that we are faced with a single, isolated scheme with a confined set of victims also supports the conclusion that [plaintiff] has not shown closed-ended continuity, even if we generously assume that the alleged scheme brought about distinct injuries to the affected [victims]."); *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 663 (7th Cir. 1992) (finding that plaintiffs failed to allege a pattern of racketeering activity even though the purported scheme took several years to unfold, involved a variety of criminal acts, and targeted multiple victims).

Plaintiffs have also failed to demonstrate that Defendants engaged in a RICO enterprise. A RICO enterprise requires proof of "an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amendable to hierarchical or consensual decision-making." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995) (citation omitted). An enterprise "must be more than a group of people who get together to commit a pattern of racketeering activity." *Id*. (quotations and citations omitted). "Without a requirement of structure, 'enterprise' collapses to 'conspiracy.'" *See Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 805 (7th Cir. 2008).

Here, Plaintiffs conclusively state that Defendants "were an enterprise" that worked together to defraud the investors. (Compl. ¶ 156.) Plaintiffs allege that Ghuman purchased gas stations and sought out investors; Mehta prepared false income documents; and AEB secured the loans. Plaintiffs, however, do not reference any other details regarding the "structure" of the alleged enterprise. *See Boyle v. U.S.*, 129 S.Ct. 2237, 2244 (2009) (noting that the structural features of a RICO enterprise include: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."). In short, Plaintiffs do not demonstrate that the Defendants used the structure of the alleged enterprise to engage in a pattern of racketeering activity. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 388-89 (7th Cir. 2010) (applying *Boyle* and holding that while plaintiffs demonstrated a purpose, relationships, and longevity, they did not demonstrate that defendants were "*using* an enterprise to engage in a pattern of racketeering activity.") (emphasis in original). Put another way, Plaintiffs fail to demonstrate that the Defendants participated in the conduct of the enterprise's affairs, not just their own affairs. *Reeves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (RICO "liability depends on showing that the defendants conducted or participated in the

| STATEMENT |
|---|

conduct of the '*enterprise's* affairs," not just their *own* affairs.") (emphasis in original). To that end, Plaintiffs do not demonstrate that the Defendants shared in the profits of the alleged enterprise as opposed to merely taking their own respective profits from their respective actions related to the scheme.[2] *See Jay E. Hayden Found.*, 610 F.3d at 389.

Plaintiffs are therefore unable to allege a pattern of racketeering activity or an enterprise as required by RICO. As such, the Court grants Defendants's Motions to Dismiss with respect to Count IV with prejudice. Plaintiffs's remaining claims—Counts I-III and V-X—are all brought under state law. The Seventh Circuit consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999). Finding no justification for departing from that "usual practice" in this case, the Court dismisses without prejudice the supplemental state law claims asserted in Counts I-III and V-X.

1. Plaintiffs allege that Defendants began approaching them with investment opportunities in August 2007 and continued to pitch the investments in October 2007 and December 2007. (Compl. ¶¶ 47, 72, 92.) The earliest allegation that Defendants deceived Plaintiffs occurred in September 2007 when Ghuman presented "grossly overstated" sales figures for several of the gas stations. (Compl. ¶ 95.) Nonetheless, taking the facts in the light most favorable to Plaintiffs, the Court will assume that the scheme began in August 2007.

2. Indeed, Plaintiffs concede that Ghuman "absconded" with "millions of dollars in profit" and fled to India leaving the other members of the alleged enterprise behind. (Compl. ¶ 152.)